IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rev. Steven Lee Hewitt, Sr., ) | C/A No. 0:12-2720-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Dr. Philip Sinato; Ms. T. McCants; ) | |
| Ms. L. Lee, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Steven Hewitt ("Hewitt"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 28.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Hewitt was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 29.) In response, Hewitt filed a document entitled "Motion for Court to Deny Def[]endants['] Motion for Summary Judgement [*sic*]." (ECF No. 32.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Hewitt's motion should be denied.

**BACKGROUND**

Hewitt is incarcerated at Lieber Correctional Institution ("Lieber") in Ridgeville, South Carolina. Hewitt claims that he currently suffers from post-traumatic stress disorder ("PTSD"), bipolar disorder, "major depression," anxiety, panic disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"). Hewitt alleges that he has yet to receive any therapy since July 26, 2010; he

only gets to see Dr. Philip Sinato, the prison psychiatrist, for fifteen minutes four times each year; and that his treatment is based solely on drugs that do not help him.

Hewitt alleges that the staff at Lieber have "taken advantage" of a riot that broke out in the Ashley Unit at Lieber in February of 2012 and placed the inmates in Ashley on 24/7 lockdown. Under lockdown, Ashley allows two showers only per month, no visitors, no recreation, and no phone; and Hewitt claims these conditions are making his disorder symptoms much worse. Hewitt further alleges that the guards in Ashley do not know how to handle people with mental disorders, causing more stress and aggravation for himself. He also claims that the prison officials' actions have caused many problems with his medication, and at different times he has been forced to go several days without medication, has been given the wrong medication, or has not been given all of his medication.

Hewitt claims that Ashley's conditions are "below human" with inadequate food, poor lighting, spiders, extremely loud noises, and other restrictions and problems. Hewitt further alleges that Ashley is used to "punish people" and that inmates with mental health problems are getting "mixed in" with its severe conditions. Hewitt also alleges that he has spoken with Dr. Sinato and Sherise Birch, his counselor, about the conditions and has asked them for relief, only to be ignored. According to Hewitt, Dr. Sinato and Ms. Birch have the power to move Hewitt back to the mental health dormitory in Lieber but have refused to do so. Hewitt claims that he is being treated "below a human standard," his concerns about his mental conditions are being ignored by the prison staff, and that the environment in Ashley is too much for someone with his conditions to handle.

Hewitt claims that he has gone through the grievance process, but he has yet to receive a response.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that

the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

As an initial matter, the defendants argue that summary judgment should be granted in their favor due to Hewitt's failure to exhaust his administrative remedies before filing the instant lawsuit. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff

failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC") is generally part of the available administrative remedies an inmate must exhaust. S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)).[1]

Although Hewitt alleges in his Complaint that he went through the grievance process and has yet to receive a response, defendants contend that Hewitt has only filed one grievance, #LCI-0328-12, that could potentially relate to the issues in this lawsuit, that SCDC has responded to this grievance, and that Hewitt has failed to file a Step 2 grievance to appeal SCDC's resolution or appeal to the Administrative Law Court. (ECF No. 28-1 at 20.) The defendants have supported this

---

[1] Subsequent statutory amendments and case law have established certain exceptions to Furtick's general rule that are not applicable here. See, e.g., Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the Administrative Law Court lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the Administrative Law Court is without jurisdiction to hear *facial* challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies)).

contention with an affidavit by Ann Hallman, Branch Chief of SCDC's Inmate Grievance Branch. (See generally ECF No. 29-5.) In response, Hewitt merely claims that he is in lock down, so he is unable to obtain or submit any affidavits of his own, that his access to legal books is limited, and that he has not obtained requested discovery materials from the defendants. Hewitt's assertions are alone insufficient to refute the defendants' well-supported showing that Hewitt failed to fully and properly exhaust his administrative remedies before filing this matter. See, e.g., Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003) (collecting cases and recognizing "the holdings of many of our sister circuits that permitting exhaustion pendente lite undermines the objectives of section 1997e(a) and that the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur"). Accordingly, the defendants are entitled to summary judgment on this claim based on Hewitt's failure to exhaust properly his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). Moreover, even if the court were to determine that Hewitt had properly exhausted this claim, the defendants would nonetheless be entitled to summary judgment for the reasons discussed below.

**C.    Hewitt's Claims**

To establish a claim under the Eighth Amendment for deliberate indifference to medical needs, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.

Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the

appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Hewitt has failed to provide any evidence from which a reasonable jury could find deliberate indifference to his medical needs. Hewitt's Complaint appears to allege that, despite his attempts to inform Sinato of his need for therapeutic treatment, Sinato refused or failed to provide proper care and was deliberately indifferent to his medical needs. Hewitt also alleges that his medication has not been sufficient. In support of their motion for summary judgment, the defendants have provided Hewitt's medical records which show that Dr. Sinato saw Hewitt regularly for his mental conditions. (See generally Medical Records, ECF No. 22-2 at 13-23.) The defendants have also submitted Dr. Sinato's affidavit describing his sessions with Hewitt and the judgments he made regarding Hewitt's symptoms and concerns, as well as the authority Sinato has over inmate placement. (Sinato Aff., ECF No. 28-2.) Sinato's affidavit further states that Hewitt was additionally visited regularly by a counselor for concerns about his mental conditions. (Id.) Thus, Hewitt's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Hewitt was regularly seen by Sinato and others with regard to his mental conditions.

As stated above, Hewitt does not have a constitutional claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Hewitt's claims allege negligence or medical malpractice, which are not actionable in a constitutional claim. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th

Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, as argued by the defendants, Hewitt's Complaint does not appear to include any allegations of personal involvement by Defendants McCants and Lee in connection with any alleged constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

Moreover, to the extent that Hewitt is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."); Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).  As an arm of the state, the defendants are entitled to sovereign immunity and cannot constitute a "person" under § 1983 in that capacity.  See Will, 491 U.S. at 70-71.  Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  See S.C. Code Ann. § 15-78-20(e).

Further, to the extent that Hewitt is seeking to raise state law claims of medical negligence or malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina.  S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993).  It is undisputed that Hewitt has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against the defendant.

Finally, to the extent that Hewitt's Complaint may be construed to allege any other constitutional violations, the court finds that Hewitt has failed to plead sufficient facts to state a plausible claim against these defendants.  See Iqbal, 556 U.S. at 667-68.

### RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 28) be granted and Hewitt's motion (ECF No. 32) be denied.

                                                                                  _____
                                                                                  Paige J. Gossett
                                                                                  UNITED STATES MAGISTRATE JUDGE

July 17, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).